1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ALLEN BROWN, | 1:10-cv-02176-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | |
| Defendant. | |

## I.  BACKGROUND

Plaintiff Anthony Allen Brown ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act").  42 U.S.C. §§ 405(g), 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 8, 9.)  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1958, completed the 12th grade, and previously worked as a care provider and general laborer, including performing such jobs as washing cars, housekeeping, and yard work. (Administrative Record ("AR") 36-37, 140, 143.) On December 20, 2007, and January 4, 2008, respectively, Plaintiff filed applications for DIB and SSI, alleging disability beginning on December 10, 2007, due to mental problems, stress, and arthritis in his hands. (AR 105-16, 139.)

### A.    Relevant Medical Evidence

Between June 5, 2007, and October 6, 2007, Plaintiff was seen for psychiatric treatment while he was an inmate at the California Department of Corrections ("CDC"). (AR 201-20.) Plaintiff was self-referred and reported that he was "hearing voices" and could not sleep. (AR 217, 219.) Plaintiff indicated that he "need[ed] med[ication] A.S.A.P." (AR 219.) Plaintiff was diagnosed with bipolar disorder with psychotic features and was prescribed the generic medication of Abilify, Celexa, and Remeron. (AR 207, 220.) The medical notes indicate that Plaintiff became psychiatrically "stable" on medication. (AR 211, 212, 217.)

On January 19, 2008, Plaintiff was seen by J.K. Zhang, Psy.D., for a psychological evaluation. (AR 166-68.) Dr. Zhang conducted a clinical interview and indicated that Plaintiff "demonstrate[d] below-average level of cognitive functioning with somewhat impaired memory and attention." (AR 166, 168.) Dr. Zhang noted that Plaintiff reported he "suffer[ed] from auditory hallucinations of someone telling him to be careful. He is paranoid as a result." (AR 168.) Dr. Zhang stated that Plaintiff had "served one prison term from 2006 to 2007" after being "convicted of possession of cocaine" and was "currently on parole." (AR 167.) The Parole Outpatient Clinic prescribed Remeron and Seroquel for Plaintiff. (AR 167.) Plaintiff was diagnosed with psychotic disorder not otherwise specified, depressive disorder not otherwise specified, and antisocial personality disorder. (AR 168.) Dr. Zhang recommended that the treatment with psychotropic medication be continued. (AR 168.) Dr. Zhang opined that Plaintiff was "expected to have moderate level of difficulty sustaining adequate concentration, persistence, and pace in common work and social settings. His capacity to interact appropriately with the public, supervisors, and

coworkers may be compromised at times." (AR 168.) Further, Plaintiff's "ability to understand, remember, and carry out complex instruction [was] limited." (AR 168.)

On April 27, 2008, Plaintiff underwent a comprehensive internal medical evaluation by Emanuel Dozier, M.D. (AR 169-73.) Dr. Dozier noted that there was "no acute joint inflammation or effusion" of Plaintiff's extremities, although there was "local tenderness over the metacarpophalangeal and proximal interphalangeal joints of both hands." (AR 171.) Dr. Dozier conducted range of motion testing, and found that Plaintiff's fingers and thumbs had "[f]lexion/extension of the proximal phalanx 70 degrees and distal phalanx 90 degrees bilaterally." (AR 172.) Further, Plaintiff's motor strength was "5/5 in the upper and lower extremities bilaterally" and grip strength was "5/5 bilaterally." (AR 172.) Dr. Dozier indicated a medical impression of "[d]egenerative arthritis, as evidenced by local joint pain, tenderness, and limited range of motion" and "mild, persistent, bronchial asthma." (AR 172.) Dr. Dozier provided a functional assessment and opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently "with limitations due to arthritis and asthma," and would be limited to "occasional bending, stooping, crouching, pushing, and pulling," as well as "occasional reaching, handling, feeling, and grasping." (AR 172.)

On May 16, 2008, Pamela L. Kammen, M.D., conducted a physical residual functional capacity ("RFC") assessment.[2] (AR 174-78, 193-95.) Dr. Kammen indicated that Plaintiff was limited to lifting 50 pounds occasionally and 25 pounds frequently, sitting, standing, and walking six hours in an eight-hour day, and occasionally climbing, stooping, and crouching. (AR 175-76.) Dr. Kammen indicated that Plaintiff was unlimited in his ability to push/pull, and had no manipulative or visual limitations. (AR 175-76.) The only environmental limitation indicated was

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (AR 177.)

On May 29, 2008, Robert Y. Hood, M.D., conducted a psychiatric review and mental RFC assessment. (AR 179-92.) Dr. Hood indicated that Plaintiff was mildly limited in social functioning and moderately limited in maintaining concentration, persistence, and pace, but had no limitations with regards to activities of daily living. (AR 187.) Dr. Hood also found that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions. (AR 190.) Dr. Hood noted that Plaintiff had been "recently released from [the CDC] after serving time for cocaine infractions. There is little medical evidence of record in the [CDC] records related to mental health services." (AR 191.) Dr. Hood indicated that Plaintiff had "requested [a] consult before his discharge [from the CDC] for 'voices.' No other behavioral notes [were] in [the] file." (AR 191.) Dr. Hood opined that the "description of psychosis is vague and generalized. The severity is not supported by impaired activities of daily living (ADL) [or] social functioning. The concentration, persistence and pace may be limited to simple routine repetitive tasks." (AR 191.) Dr. Hood's RFC assessment indicated that Plaintiff could "[u]nderstand and remember simple and some detailed tasks," "[c]arry out simple tasks for a normal workweek," maintain "[l]imited public contact," and had "[n]o significant limitations." (AR 192.)

On August 13, 2008, Lavanya Bobba, M.D., conducted a case analysis and affirmed the findings of Dr. Kammen and Dr. Hood. (AR 196-97.) Dr. Bobba noted that Plaintiff alleged that he was "unable to use his right arm," but there had been "no treatment" of that condition. (AR 196.)

**B.   Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 63-67, 68-72, 73, 101.) On April 26, 2010, ALJ John Heyer held a hearing in which Plaintiff and vocational expert ("VE") Kenneth Ferra testified. (AR 33-53.)

### 1.    Plaintiff's Testimony

Plaintiff testified that he was 52 years old on the date of the hearing and lived with his aunt. (AR 36, 44.) Plaintiff stated that he could not remember when he last worked but his previous jobs

included working as a car washer, housekeeper, care provider, and general laborer.  (AR 36-37.)

Plaintiff said that he was unable to work because he was "always depressed," had a "bad knee," and

had arthritis in his right hand.  (AR 37.)  Plaintiff indicated that he was in "a little" pain, which was

worse in his right knee and rated at "eight" out of a "pain scale of one to ten."  (AR 46.)  Plaintiff

stated that he did not know what was wrong with him mentally, but believed that he had been given

medication for bipolar and schizophrenic conditions.  (AR 42.)  He also indicated that he would

"[s]ometimes . . . hear voices" and was "always depressed."  (AR 42.)  Plaintiff was taking three

psychiatric medications that helped a "little bit," and was taking over-the-counter Tylenol to treat

his knee and hand pain.  (AR 37-38, 41.)

Plaintiff indicated that he did not know how his medical conditions limited his ability to

work, but stated that he did not like to be "around a lot of people" because he would hear voices and

believed that people were talking about him.  (AR 42.)  Plaintiff said that he did not know if he could

work at an "assembly job" because he had "never tried it."  (AR 43.)  Plaintiff stated that he

attempted to get a job "passing out fliers" when he first got out of prison, but that the employers were

not hiring.  (AR 43.)

Plaintiff indicated that his daily activities consisted of personal grooming, watching

television, sitting outside with his aunt, and eating meals.  (AR 39.)  Plaintiff did not perform any

household chores, yard work, or shopping.  (AR 39.)  Plaintiff stated that he could lift approximately

ten to fifteen pounds, could only walk and stand for a "couple of minutes," and could sit for "about

an hour."  (AR 40.)  Plaintiff said he could walk "[a]bout 55, 75 feet" and then would need to rest.

(AR 47.)  Plaintiff said that he would "sometimes" have trouble putting on his shoes.  (AR 48.)

Plaintiff was able to attend church since it "don't last but an hour," and would get exercise by

walking "to the mailbox and back."  (AR 48.)  Plaintiff had a history of substance abuse but testified

that he had not used cocaine in "about nine years" and had only been selling, but not using, cocaine

at the time of his arrest and incarceration.  (AR 38-39.)

Plaintiff indicated that he was staying with his aunt, would help her out for money, and was

providing services for rent.  (AR 49.)  Plaintiff said, however, that he could not work for someone

else because he "then [he would] have to go somewhere, and . . . [he] can't walk that far.  All [he could] do now was take out the trash."  (AR 50.)

### 2.    VE Testimony

The VE testified that Plaintiff's former position as a home attendant was medium and semiskilled, his positions as a general laborer and car washer were medium and unskilled, and his job as a housekeeper was light and unskilled.  (AR 49.)  The ALJ asked the VE whether a hypothetical person could perform Plaintiff's past relevant work if that person could lift 20 pounds and alternate between sitting and standing to work a full eight-hour day.  (AR 50.)  The VE testified that a hypothetical person could not perform Plaintiff's past relevant work because of the sit/stand option, but could perform other work including assembler, order clerk, call-out operator.  (AR 50.)

Plaintiff's counsel proposed a hypothetical to the VE in which the person was Plaintiff's age, could lift and carry 50 pounds occasionally and 25 pounds frequently, and could occasionally crouch, bend, stoop, reach, handle, feel, and grasp, had environmental limitations, had moderate problems with concentration, persistence, and pace, and his ability to get along with others was compromised. (AR 51.)  Plaintiff's counsel clarified that the moderate restriction in concentration, persistence, and pace would take him off task approximately 25 percent of the time.  (AR 51.)  The VE testified that there would be no jobs available with that limitation.  (AR 51.)

### D.    ALJ's Decision

On January 19, 2010, the ALJ issued a decision finding Plaintiff not disabled since December 10, 2007, the alleged date of his disability onset.  (AR 9-18.)  Specifically, the ALJ found that (1) Plaintiff met the insured status requirements of the Act through December 31, 2007; (2) Plaintiff had not engaged in substantial gainful activity since December 10, 2007, the alleged disability onset date; (3) Plaintiff had "severe" impairments of mood disorder and arthritis of the hands and right knee based on the requirements in the Code of Federal Regulations; (4) Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Plaintiff had the RFC to perform light work, limited to the ability to lift 20 pounds, needing a sit/stand option to complete an eight-hour day, and to work in an environment with minimal interaction with others; (6) Plaintiff was unable to perform past

relevant work; (7) Plaintiff was defined as a younger individual on the alleged disability onset date and subsequently changed age category to an individual approaching advanced age; (8) Plaintiff had at least a high school education and was able to communicate in English; (9) the transferability of job skills was not material to the disability determination because Plaintiff was "not disabled" under the Medical-Vocational Rules whether or not Plaintiff had transferrable job skills; (10) there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; and (11) Plaintiff had not been under a disability as defined in the Social Security Act since December 10, 2007, through the date of the decision.  (AR 11-17.)

Plaintiff sought review of this decision before the Appeals Council.  On September 19, 2010, the Appeals Council denied review.  (AR 1-3.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**E.    Plaintiff's Contentions on Appeal**

On November 18, 2010, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  (Doc. 1.)  Plaintiff contends that the ALJ erred by (1) failing to provide any reason to reject Plaintiff's reaching and handling limitation, and (2) failing to include any limitation as to concentration, persistence, and pace in the RFC.  (Doc. 13.)

### III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

305 U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.  APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).  The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in

1  the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094,

2  1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

### V.  DISCUSSION

**A.      The ALJ Did Not Err in Rejecting Plaintiff's Manipulative Limitations**

Plaintiff contends that the ALJ failed to provide any reason to reject the consultative examiner Dr. Dozier's opinion that Plaintiff was limited to only occasional reaching, handling, fingering, and grasping.  (Doc. 13, 4:8-10.)  Defendant contends that the ALJ properly found that Plaintiff did not have manipulative limitations and further asserts that, even if Plaintiff was limited to occasional manipulation, the ALJ identified a significant number of jobs Plaintiff could perform. (Doc. 15, 8:11-18.)

**1.      Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009)*.*  The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

1

2
      **2.**      **The ALJ Provided Specific and Legitimate Reasons to Reject Dr. Dozier's Finding of Plaintiff's Manipulative Limitations**

3         Plaintiff contends that the ALJ "failed to provide any reason to reject the opinion of the

4   consultative examination that [Plaintiff] was limited to only occasional reaching, handling, fingering,

5   and grasping."  (Doc. 13, 4:8-10.)

6         In determining Plaintiff's physical limitations, the ALJ noted that:

7

8

9

10

11
> In terms of the claimant's alleged arthritis of the hands and other joints, the record does not support the degree of functional impairment alleged.  The record is sparse overall, with few indications of physical impairments and little objective evidence of associated significant functional difficulty.  In the internal medicine consultative examination, there were minimal findings showing slightly limited range of motion and tenderness of the hands and rights knee, with complaints of local joint pain . . . . [T]he complaiant reported treating his joint pain conservatively with over-the-counter medication of Tylenol.

12  (AR 14.)   The ALJ further found that Plaintiff's "residual functional capacity assessment is

13  supported by the lack of medical evidence of record demonstrating greater functional limitation due

14  to physical impairments . . . and treatment notes and reports reflecting a good level of maintained

15  daily activities and response to medication."  (AR 15.)

16         Plaintiff was seen by Dr. Dozier on April 27, 2008, for a comprehensive internal medicine

17  evaluation.  (AR 169-73.)  Dr. Dozier examined Plaintiff for the chief complaints of arthritis and

18  asthma. (AR 169.)  Dr. Dozier conducted a physical examination, including testing Plaintiff's range

19  of motion, and determined that Plaintiff had "[d]egenerative arthritis, as evidenced by local joint

20  pain, tenderness, and limited range of motion."  (AR 171-72.)   The relevant range of motion

21  findings indicated that Plaintiff's fingers and thumbs had "[f]lexion/extension of the proximal

22  phalanx 70 degrees and distal phalanx 90 degrees bilaterally," and that Plaintiff's motor strength was

23  "5/5 in the upper and lower extremities bilaterally" and grip strength was "5/5 bilaterally."

24  (AR 172.)   Dr. Dozier opined that Plaintiff could lift and carry 50 pounds occasionally and

25  25 pounds frequently, but his manipulation restrictions were limited to occasional reaching,

26  handling, feeling, and grasping.  (AR 172.)

27         Dr. Kammen reviewed Plaintiff's medical records on May 16, 2008.  (AR 174-78.)  Dr.

28  Kammen agreed with most of Dr. Dozier's findings, but opined that the "manipulative and postural

1  restrictions are too severe given [a] relatively unremarkable exam." (AR 178.) Dr. Kammen's

2  assessment was affirmed by Dr. Bobba on August 13, 2008. (AR 196.)

3          It is appropriate for an ALJ to consider the absence of supporting findings and the

4  inconsistency of conclusions with the physician's own findings in rejecting a physician's opinion.

5  *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Matney ex rel. Matney v. Sullivan*,

6  981 F.2d 1016, 1019 (9th Cir. 1992); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989);

7  *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (per curiam). If a doctor's conclusions are not

8  consistent with his own findings, that is a specific and legitimate reason for rejecting that opinion.

9  *See Young*, 803 F.2d at 968 (treating doctor's conclusory opinion that claimant was disabled was

10  properly rejected by ALJ when it was internally inconsistent and not consistent with doctor's prior

11  medical reports). "The ALJ need not accept the opinion of any physician, including a treating

12  physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."

13  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

14          As the ALJ correctly noted, the medical "record is sparse overall, with few indications of

15  physical impairments," and there was "little objective evidence of associated significant functional

16  difficulty." (AR 14.) The only indication in the record as to Plaintiff's manipulative limitations is

17  Dr. Dozier's opinion and, as Dr. Kammen notes, such findings are internally inconsistent given

18  Plaintiff's "relatively unremarkable exam." (AR 196.) The ALJ considered Dr. Dozier's exam and

19  determined that there were only "minimal findings showing slightly limited range of motion and

20  tenderness in the hands." (AR 14.) The ALJ also noted that Plaintiff "reported treating his joint pain

21  conservatively with over-the-counter medication of Tylenol." (AR 14; *see also* AR 37-38, 41.)

22          Essentially, the ALJ could not reconcile Dr. Dozier's opined limitations given the relatively

23  conservative treatment for the condition. The ALJ concluded that the severity of the functional

24  limitations reported by Dr. Dozier was inconsistent with the mild findings on examination and the

25  conservative treatment reported.

26          "[A]n ALJ may discredit a treating physician's opinion that is unsupported by the record as

27  a whole or by objective medical findings. Moreover, a conservative course of treatment relative to

28  a finding of total disability is a proper basis for discounting the extreme restrictions reported by a

treating physician." *Jones v. Astrue*, No. 2:09–cv–03214 KJN, 2011 WL 1253727, at *4 (E.D. Cal. Mar. 31, 2011) (citations omitted).

Further, the ALJ may consider the findings of the nonexamining physicians. The Commission considers "all evidence from nonexamining sources to be opinion evidence." 20 C.F.R. § 404.1527(f). "Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review." Social Security Ruling ("SSR") 96-6p.[3] Accordingly, the ALJ may rely upon Dr. Kammen's opinion in light of the finding that there was no substantial evidence in the record to support Dr. Dozier's finding concerning Plaintiff's manipulative limitation. As such, the ALJ provided legitimate and specific reasons to reject Plaintiff's manipulative limitations.

Plaintiff's additional argument that the ALJ failed to identify jobs at Step Five that Plaintiff could perform is not supported, since the ALJ properly found that there were no manipulative restrictions and thus Plaintiff could perform the jobs identified.

**B.   The ALJ Properly Considered Plaintiff's Moderate Limitation in Concentration, Persistence, and Pace**

Plaintiff contends that the ALJ failed to include any limitation in concentration, persistence, and pace, although he gave "significant weight" to the findings of the consultative psychological examiner, Dr. Zhang, who opined that Plaintiff would have a "moderate level of difficulty sustaining adequate concentration, persistence, and pace in common work and social settings." (Doc. 13, 5:7-17, *see also* AR 15, 168.) Defendant contends that the ALJ's finding that Plaintiff could only perform unskilled work incorporates the moderate limitation in concentration, persistence, and pace. (Doc. 15, 11:18-13:5.)

---

[3] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

The ALJ considered Plaintiff's mental impairments and determined that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (AR 12.) In considering Dr. Zhang's opinion, the ALJ determined that:

> Observing good results with psychotropic medications, the examining psychologist opined that the claimant would have moderate difficulty sustaining adequate concentration, persistence, and pace in common work and social settings, compromised ability to interact appropriate with the general public, coworkers, and supervisors at times, and limited ability to understand and remember complex instructions . . . . This opinion is credited with significant weight because it is consistent with the record as a whole.

(AR 15.)

As such, the ALJ discussed the medical evidence in his RFC discussion with regard to Plaintiff's mental limitation as to concentration, persistence, and pace, and credited Dr. Zhang, who found that Plaintiff had a moderate degree of difficulty but could also perform limited complex tasks as well as simple ones. (AR 15, 168.) The ALJ clearly established the RFC and determined that Plaintiff had moderate difficulties concerning concentration, persistence, and pace.

Plaintiff contends that the ALJ failed to incorporate this limitation. Plaintiff fails to articulate how the work identified by the VE and adopted by the ALJ is incompatible with moderate limitations in concentration, persistence, and pace. Plaintiff's brief is devoid of any analysis to support his contention. (*See* Doc. 13, 5:7-17.) Even assuming, however, that the ALJ did not expressly incorporate any mental limitations related to the simplicity of jobs when posing his hypothetical to the VE, and further assuming that such silence was error, this error would be harmless since the jobs identified by the VE were of the type that may be performed by someone with moderate limitations as to concentration, persistence, and pace.

The ALJ limited Plaintiff's RFC to light work and then further stated that he was only considering the "unskilled light occupational base." (AR 13, 16.) "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a); 416.968(a). Unskilled work includes the mental demands to "understand, carry out, and remember simple instructions." SSR 85-15. The Ninth Circuit upheld the finding that a claimant with marked difficulty in concentration was able to perform unskilled work. *Thomas*, 278 F.3d at 957-58 (finding that "[n]othing in the record reveal[ed] inconsistency

13

in the ALJ's findings" when it was determined that the claimant could perform unskilled work despite "marked limitations [with concentration] over extended periods of time"). Here, Plaintiff's limitations were only moderate, not marked. Accordingly, Plaintiff had the ability to perform unskilled work.

The Commissioner has determined that certain Specific Vocational Preparation ("SVP") levels set forth by the Dictionary of Occupational Titles ("DOT") correspond with the definition of unskilled work. SSR 00-4p. Specifically, "unskilled work corresponds to an SVP of 1-2." *Id*. Thus, jobs that require an SVP level 2 are unskilled jobs and can be performed by a claimant with moderate (and even marked) limitations in concentration, persistence, and pace.

At the hearing, the VE identified positions that Plaintiff could perform – an assembler (DOT No. 712.687-010), an order clerk (DOT No. 209.567-014), and a call-out operator (DOT No. 237.367-014) – which all have an SVP level of 2. Accordingly, the ALJ established that there were unskilled jobs Plaintiff could perform that, by the nature of being unskilled and at an SVP level 2, properly incorporated the ALJ's finding that the Plaintiff had "moderate difficulties" with regard to concentration, persistence, and pace. (*See* AR 12.)

Additionally, while the Court recognizes that Plaintiff's limitation of moderate difficulty with concentration, persistence, and pace could potentially affect his ability to perform higher reasoning work, one of the jobs identified by the VE, assembler, has a reasoning level of 2. (DOT No. 712.687-010). A reasoning level of 2 is compatible with limiting a claimant to simple, repetitive work. *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983-85 (C.D. Cal. 2005); *Moua v. Astrue*, No. CIV S-07-2024 GGH, 2009 WL 997104, at *12-13 (E.D. Cal. Apr. 14, 2009). A moderate limitation, such as Plaintiff's moderate limitation as to concentration, persistence, and pace, is compatible with an RFC for simple, unskilled work. *See Valentine*, 574 F.3d at 690-91. Further, the VE found that Plaintiff had a "limited ability to understand and remember complex instructions" and was thus not restricted to simple, repetitive tasks. (AR 15.) However, even if the ALJ erred and Plaintiff should have been limited to simple, repetitive work, such error is harmless as "[a] limitation to simple, routine, repetitive work is not inconsistent with the ability to perform unskilled work." *Dunn v. Astrue*, No. 1:09-cv-00530-DLB, 2010 WL 1610989, at * 11 (E.D.Cal. Apr. 21, 2010)

1  (citing *Rael v. Astrue*, No. 2:08-cv-01868-GGH, 2010 WL 716219, at *9 (E.D.Cal. Mar. 2, 2010)

2  and SSR 85-15).

3       Here, the ALJ identified jobs that Plaintiff could perform, which included an assembler, an

4  unskilled job with an SVP of 2 and a reasoning level of 2. This position fully encompasses any and

5  all restrictions imposed by Plaintiff's moderate difficulties with concentration, persistence, and pace.

6  The VE testified that there were 33,000 assembler positions in California, but that number would

7  be reduced by 80 percent for Plaintiff to accommodate a sit/stand option. (AR 50.) As such, there

8  would be 6,600 jobs in California. The Ninth Circuit has found less than 6,000 jobs sufficient to

9  show that a substantial number of jobs exist to meet the ALJ's burden at Step Five. *See Thomas*, 278

10 F. 3d at 960 (finding 1,300 regional jobs sufficient); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir.

11 1995) (finding 2,300 regional jobs sufficient).

12      At the hearing, Plaintiff's counsel inquired of the VE whether a moderate limitation in

13 concentration, persistence, and pace would prevent Plaintiff from working. (AR 51.) When

14 Plaintiff's counsel clarified that the moderate restriction would take him off task approximately

15 25 percent of the time, the VE testified that there would be no jobs available. (AR 51.) The ALJ,

16 however, rejected this hypothetical as "not supported by the evidence of the record." (AR 17.) The

17 ALJ may properly "refuse[] to lend any weight to the [hypothetical question] because it did not

18 address [the] RFC and did not appear to be based on [the] individual record as a whole."

19 *Stubbs-Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008.) Further, Plaintiff fails to provide

20 authority to support that a moderate limitation would take a person off-task 25 percent of the time

21 or cite any evidence from the record as to why such a limitation should have been considered. (*See*

22 Doc. 13, 5:7-17.)

23      The ALJ reviewed the record, determined that Plaintiff had moderate restrictions as to

24 concentration, persistence, and pace, and then properly identified positions that Plaintiff could

25 perform based upon that determination. As such, the ALJ properly considered Plaintiff's limitation.

26 ///

27 ///

28 ///

## VI.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Anthony Allen Brown.


IT IS SO ORDERED.

**Dated:      March 5, 2012**                              /s/ Sheila K. Oberto
                                                    UNITED STATES MAGISTRATE JUDGE